IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANEUDY NIEVES-DELOSSANT, | : | No. 3:11cv1764 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| ERIC HOLDER, JANET | : | |
| NAPOLITANO, THOMAS DECKER | : | |
| and CRAIG LOWE, | : | |
| Respondents | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Petitioner Aneudy Nieves-Delossant (hereinafter "petitioner"), currently detained by the Department of Homeland Security's Bureau of Immigration and Customs Enforcement (hereinafter "ICE") at the Pike County Correctional Facility in Pike County, Pennsylvania (hereinafter "PCCF"), filed the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner challenges his continued detention by ICE as a violation of his Fifth Amendment due process rights. Magistrate Judge Thomas M. Blewitt issued a report and recommendation, which advised that petitioner be afforded, within ten days of his return to ICE custody, an individualized inquiry into whether his continued detention is necessary to carry out the purposes of 8 U.S.C. § 1226(c). (Doc. 8). Respondents Holder, Napolitano, Decker and Lowe[1] (hereinafter "the government")

---

[1] As Magistrate Judge Blewitt noted, the only proper respondent identified is Craig Lowe, the Warden at PCCF. See 28 U.S.C. §§ 2242, 2243.

objected to Magistrate Judge Blewitt's report and recommendation. (Doc. 13). Therefore, this case is ripe for disposition. For the reasons discussed below, we will adopt Magistrate Judge Blewitt's report and recommendation. Petitioner will be afforded, within ten days, with an individualized inquiry into whether his continued detention is necessary to carry out the purposes of 8 U.S.C. § 1226(c).

**Procedural and Factual Background**

### A. Conviction and ICE Detention

Petitioner is a twenty-two year old native of the Dominican Republic and has lived as a lawful permanent resident in the United States for the past seven years. (Doc. 1, Habeas Pet. at 4). On November 23, 2010, petitioner was convicted of drug offenses (possession of cocaine and drug paraphernalia) in the Luzerne County Court of Common Pleas. (Id.)

ICE initiated removal proceedings against petitioner on February 11, 2011. (Id. at 4-5). On the same day ICE initiated removal proceedings against him, ICE took petitioner into custody and detained him at PCCF pursuant to 8 U.S.C. 1226(c). (Id. at 5). On February 24, 2011, petitioner appeared before an Immigration Judge (IJ) and requested time to seek counsel. (Doc. 13-1, Ex. A, Decl. of Kent J. Frederick ¶ 4). The IJ granted this request even though Attorney Raymond Lahoud already filed a notice of representation on behalf of petitioner.[2] (Id. ¶¶ 3-4). On

---

[2] It appears that petitioner and the IJ were unaware that Attorney Lahoud filed his notice of representation on February 23, 2011, the day before petitioner's scheduled hearing. (See Doc. 13-1, Ex. A, Decl. of Kent J. Frederick ¶¶ 3-4).

March 17, 2011, petitioner appeared before the IJ with Attorney Lahoud participating in the hearing via telephone. (Id. ¶¶ 5-6). Over an objection from ICE, the IJ granted petitioner a continuance to explore the possibility of a Post Conviction Relief Act (PCRA) claim to vacate his underlying state court convictions. (Id. ¶ 6). As will be explained below, petitioner's state court convictions provide the basis for his potential deportation, therefore, petitioner will squash the removal proceeding if he successfully vacates the state court convictions.

Lahound withdrew from the case on May 18, 2011. (Id. ¶ 7). Petitioner appeared before the IJ with a new attorney, Theodore Murphy, on May 19, 2011. (Id. ¶ 8). At the May 19 hearing, the IJ granted Murphy a continuance to review the case. (Id.) The IJ rescheduled the hearing for July 14, 2011. (Id.) At the July 14, 2011 hearing, the IJ granted Murphy leave to withdraw from the case as he claimed that petitioner failed to pay his legal bills. (Id. ¶ 9). Petitioner sought a continuance to find a new lawyer, and the IJ reset the case for September 1, 2011. (Id.)

On August 29, 2011, petitioner requested an adjournment to collaterally attack his sentence. (Id. ¶ 10). Over opposition by ICE, the IJ granted petitioner's request. (Id. ¶¶ 10-11). ICE did not transfer petitioner to the custody of Luzerne County officials until September 23, 2011, despite the fact that ICE administratively terminated his immigration case on August 31, 2011. (Doc. 14, Mem. in Supp. of Objections at 6). Luzerne County officials held petitioner in the Luzerne County Prison in anticipation of the hearing on his PCRA petition scheduled for October 26,

2011.³  (See Doc. 8, Report & Recommendation at 5 n.5, 9).

On October 31, 2011, Luzerne County officials transferred petitioner to PCCF and ICE custody, and ICE filed a motion to re-calendar his removal case.  (Doc. 13-1, Ex. A, Decl. of Kent J. Frederick ¶ 12).  As of December 21, 2011, petitioner has been in detention for a total period of 313 days; of that time, 275 days were spent in ICE custody at PCCF and 38 days were spent in the Luzerne County Prison.

**B.  Habeas Corpus Petition**

On September 20, 2011, after his removal proceedings were administratively closed but prior to being transferred to Luzerne County custody, petitioner filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2241.  (See Doc. 1).  In his habeas petition, petitioner argues that ICE held him in custody for over seven months while awaiting completion of his removal proceedings.  Petitioner contends that his detention is in excess of the reasonable amount of time ICE had to complete the removal proceedings against him and that he should be granted an

---

³ In its most recent briefs, the government does not inform the court of the outcome of petitioner's PCRA hearing or whether his hearing was held as scheduled on October 26, 2011.  Rather, the government, without any supporting documents, represented that Luzerne County officials held petitioner for "additional criminal charges."  (Doc. 14, Mem. in Supp. of Objections at 5).  Like Magistrate Judge Blewitt, we obtained copies of petitioner's Luzerne County Court criminal docket sheets in cases CP-40-CR-1461-2010 and CP-40-CR-1462-2010 at the appropriate website (http://ujsportal.pacourts.us).  Petitioner's state court criminal dockets indicate that petitioner withdrew his PCRA claim at the October 26 hearing, that petitioner's sentence was modified at that same hearing and that petitioner has a pending appeal before the Superior Court.  Thus, the government's claim that petitioner faced new criminal charges appears to be unfounded.

individualized hearing as to whether he is dangerous or likely to flee. Petitioner claims that the failure to provide him the individual hearing violated his due process rights and that he should be released from ICE custody. Petitioner relied on the recent decision of <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221 (3d Cir. 2011) to support his contentions regarding the unconstitutionality of his detention.

On September 27, 2011, Magistrate Judge Blewitt ordered the government to respond to the habeas petition. (Doc. 2). The government responded on October 13, 2011 and primarily argued that petitioner's Section 2241 motion is moot because petitioner was not in ICE custody at that time. (<u>See</u> Doc. 7).

**C. Report and Recommendation**

In his report and recommendation, Magistrate Judge Blewitt advised that the instant habeas corpus petition be dismissed in part and granted in part. (Doc. 8, Report and Recommendation at 13). Specifically, Magistrate Judge Blewitt recommended that the petition be dismissed with respect to the request for immediate release from ICE custody and granted with respect to the request for injunctive relief–namely that petitioner be afforded, within ten days of his return to ICE custody, an individualized inquiry into whether continued detention is necessary to carry out the purposes of Section 1226(c). (<u>Id.</u>) Magistrate Judge Blewitt found that petitioner's period of detention, while prolonged to the point that an individualized inquiry is required, falls short of the threshold previously identified as

5

mandating immediate release from ICE custody.[4]  (Id. at 12 n.6).

After seeking an extension in the deadline to object to the report and recommendation, the government filed objections on November 9, 2011.  (Doc. 13). Thus bringing this case to its current posture.

**Jurisdiction**

District courts possess the power to grant habeas corpus relief to prisoners in custody in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241.  Congress did not deprive the courts of jurisdiction to grant habeas relief to an alien challenging his or her detention when it amended Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c).  Madrane v. Hogan, 520 F. Supp. 2d 654, 669 n.16 (M.D. Pa. 2007) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).  Therefore, we have jurisdiction to hear petitioner's challenge to his detention under 8 U.S.C. § 1226(c).

**Standard of Review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

---

[4] It is noteworthy that Magistrate Judge Blewitt did not make an explicit finding that petitioner's continued detention by ICE would be unreasonable under the Fifth Amendment.  Magistrate Judge Blewitt, however, recommended that, in light of the reasonableness requirement espoused in Diop, petitioner be afforded an individualized hearing upon his return to ICE custody.  (Id. at 12).

6

in whole or in part, the findings or recommendations made by the magistrate judge. Id. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). A habeas corpus petition and any supporting submissions filed pro se must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney Gen., 878 F.2d 714, 721-22 (3d Cir. 1989). However, a federal district court can dismiss a habeas petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Sears v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert denied, 490 U.S. 1025 (1989); see also 28 U.S.C. §§ 2243, 2255.

**Discussion**

In its objections, the government contends that the court should not adopt the portions of Magistrate Judge Blewitt's report and recommendation. (See Doc. 13). The government specifically objects to the report and recommendation on the grounds that Magistrate Judge Blewitt "failed to make any initial determination of reasonableness before ordering the immigration judge to conduct an individualized inquiry into the necessity of detention." (Doc. 14, Mem. in Supp. of Objections at 11). The government also argues in its objections that petitioner's continued

detention is nonetheless reasonable. The government supports this assertion by noting that petitioner's time in detention has been less than periods of detention previously identified as unreasonable. Furthermore, the government asserts that petitioner is responsible for nearly all delays in his removal proceedings.

The court disagrees with the government and finds that the government failed to establish the reasonableness of petitioner's continued detention with no individualized inquiry into its necessity.[5] The government provides minimal support for its contention that petitioner is solely responsible for any delays while ignoring other factors relevant to this court's analysis of whether continued detention is necessary (e.g. the likelihood petitioner will actually be deported and the amount of time necessary for the continuation of petitioner's removal proceedings). As the government has failed to establish that continued detention without an individualized inquiry is reasonable under the Fifth Amendment, the court will adopt the report and

---

[5] In his report and recommendation, Magistrate Judge Blewitt found that petitioner's detention was not so long as to require his immediate release from detention. (See Doc. 8, Report & Recommendation at 12 n.6). Neither party objected to this finding, and it is consistent with case law in the District. See, e.g., Motto v. Sabol, No. 4:cv-09-1675, 2010 WL 146315, at *4, (M.D. Pa. Jan. 11, 2010) (finding that "although the removal proceedings have not taken an 'unreasonably long time,' . . . . ICE will be directed to specifically address petitioner's continued detention . . . ."); Wilks v. U.S. Dep't Homeland Sec., No. 1:cv-07-2171, 2008 WL 4820654, at *3 (M.D. Pa. Nov. 3, 2008) (finding that an alien with a prolonged detention under Section 1226(c) is entitled to a meaningful review of his detention). We agree with Magistrate Judge Blewitt. Since petitioner has been detained for less than a year and is partially responsible for his continued detention, ordering his immediate release from detention is not required. Therefore, this Memorandum focuses on Magistrate Judge Blewitt's objected to recommendation, that continued detention is unreasonable with no individualized inquiry into whether that detention is necessary.

recommendation and order the Immigration Court to grant petitioner a hearing on whether his continued detention is necessary to carry out the purpose of Section 1226(c).

Prior to discussing whether petitioner's continued detention without an individualized inquiry is reasonable under the Fifth Amendment, the court first finds that petitioner's detention during the removal proceedings is mandated by federal law. The federal law under which petitioner is detained provides that the "Attorney General shall take into custody any alien who– . . . (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Petitioner, having been convicted of the controlled substance offenses, falls under 8 U.S.C. § 1227(a)(2)(B). This section provides in relevant part:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i). Therefore, under federal law, petitioner is deportable and subject to mandatory detention during removal proceedings. The question before this court is whether petitioner's continued detention without an independent inquiry is consistent with the Fifth Amendment guarantee of due process.

It is settled that detention is a constitutionally permissible part of removal proceedings. Demore v. Kim, 538 U.S. 510, 531 (2003). In Demore, the Supreme

Court found that, although aliens possess Fifth Amendment rights, Congress nonetheless has the power to make rules as to immigration and aliens that would be unacceptable to citizens. See id. at 521-22. The Court recognized that Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers . . . ." Id. at 513. The Court considered these significant concerns along with the brief and definite period of time required to complete removal proceedings, and concluded that mandatory detention without bail during this brief period is consistent with the Fifth Amendment.[6] Id. at 519-20, 529.

The Supreme Court's emphasis of the typical short and definite period of detention under Section 1226(c) distinguishes Demore from the Court's earlier holding in Zadvydas v. Davis. In Zadvydas, the Court considered the case of two aliens who challenged their post-removal order detention under 8 U.S.C. § 1231 as violative of the Due Process Clause of the Fifth Amendment. Zadvydas v. Davis, 533 U.S. 678, 684-86 (2001). The Court held that an alien who has already been ordered removed from the country can only be held in detention for a reasonable amount of time. Id. at 690. The Court ruled that a period of six months was presumptively reasonable; after this period elapses, the alien can only be detained

---

[6] In reaching this decision, the Court noted that aliens are detained during removal proceedings for one and one-half months in a vast majority of cases and five months in 15% of the cases that are appealed. See Demore, 538 U.S. 529-30. The petitioner in Demore was detained for six months, only slightly longer than the average for aliens who appeal their removal order. Id. at 530.

upon a showing of a special justification for the detention. Id. at 700-01. Demore is distinguishable from Zadvydas because (1) the deportation of the post-removal order aliens in Zadvydas was no longer attainable and (2) the post-removal order aliens can potentially be detained indefinitely while aliens subject to removal proceedings can (in theory) only be detained for a brief period of time. See Demore, 538 U.S. at 528.

Notwithstanding the Supreme Court's finding that detention under Section 1226(c) is normally constitutionally permissible because of its brief duration, federal courts have been tasked in recent years with determining when prolonged detentions under Section 1226(c) violate the Fifth Amendment. Most recently, in Diop v. ICE/Homeland Security, the Third Circuit Court of Appeals held "that § 1226(c) contains an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length. After that, § 1226(c) yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose." Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011).

Even before Diop, a consensus began to form among courts in the Third Circuit, and the federal judiciary as a whole, that prolonged detentions under Section 1226(c) raise significant constitutional questions. Many courts in this district have followed the case-specific approach to determining when detention pursuant to

11

Section 1226(c) becomes constitutionally unreasonable.[7]  Courts considering the case-specific approach to determining whether pre-removal detention is unreasonable have considered the following factors:

> (1) whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in Demore; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal; and (4) the conduct of both the alien and the government during the removal proceedings.

Hernandez v. Sabol, No. 1:cv:11-1064, 2011 WL 4949003 at *6 (M.D. Pa. Oct. 18, 2011) (citing Alli v. Decker, 644 F. Supp. 2d 535, 543-45 (M.D. Pa. 2009)).

In determining when the length of a pre-removal order alien's detention becomes constitutionally unreasonable, the Third Circuit Court of Appeals declined to adopt a bright-line test.  Diop, 656 F.3d 232-33.  The Third Circuit did not specifically address the four-factored test discussed above; rather, the court provided that a case-specific approach should consider whether 1) the alien has been detained for a significantly longer period than the average announced in

---

[7] Shortly after the Supreme Court decided the Demore case, the Sixth Circuit declined to implement a bright-line test and opted for a case-specific approach to determining whether continued mandatory detention of an alien pursuant to Section 1226(c) is reasonable.  Ly v. Hansen, 351 F.3d 263, 271-72 (6th Cir. 2004).  The Ly Court wanted to give immigration judges leeway based on the particular facts of a case.  Id. at 271.  The case-specific approach adopted by the Ly Court considers whether there is an actual chance of deportation, whether the alien is responsible for the delay and whether continued detention is necessary to achieve the purposes of the statute.  Id. at 271-71.  Courts in this District have adopted a reasonableness test similar to the one discussed in Ly.  See, e.g, Hernandez v. Sabol, No. 1:cv-11-1064, 2011 WL 4949003, at *6 (M.D. Pa. Oct. 18, 2011); Jayasekara v. Warden, York Cnty Prison, No. 1:10-cv-1649, 2011 WL 31346, at *4 (M.D. Pa. Jan. 5, 2011); Rodrigues v. Holder, No. 3:09-cv-1764, 2010 WL 830929, at *5 (M.D. Pa. March 4, 2010); Alli v. Decker, 644 F. Supp. 2d 535, 543-44 (M.D. Pa. 2009); Prince v. Mukasey, 593 F. Supp. 2d 727, 732 (M.D. Pa. 2008).

Demore, 2) the individual detainee's need for more time, 3) the exigencies of a particular case that may cause a delay and 4) errors in proceedings. See id. at 233-34. The court placed special emphasis on the length of detention, providing that:

> Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case. That being said, we note that the reasonableness of any given detention pursuant to § 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute, and, given that Congress and the Supreme Court believed those purposes would be fulfilled in the vast majority of cases within a month and a half, and five months at the maximum, . . . **the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds**.

Id. at 234 (internal citations omitted ) (emphasis added). In other words, when an alien's mandatory detention pursuant to Section 1226(c) is no longer brief, the facts surrounding that alien's detention must clearly establish that such a detention is reasonable.

The government has the burden of establishing that an alien's detention under Section 1226(c) is reasonable without an individualized inquiry when that alien's detention is no longer for a brief period of time as defined in Demore. Placing the burden of establishing reasonableness on the government is consistent with longstanding constitutional principles because "[f]reedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. La., 504 U.S. 71, 80 (1992)). Furthermore, it is well established that courts place "a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both 'particularly important' and 'more

13

substantial than mere loss of money.'" Cooper v. Okla., 517 U.S. 348, 363 (1996) (quoting Santosky v. Kramer, 455 U.S. 745, 756 (1982)).

In the instant case, petitioner has been detained for 313 days. Petitioner's detention is roughly three and a half times longer than the brief 90-day period of time identified in Demore, and it is roughly twice as long as the exceptional five month period Demore identified as indicative of 15% of removal cases. The court finds that petitioner's 313 day detention is significantly longer than the average removal proceeding case.[8] Therefore, the government has the burden of establishing that petitioner's continued detention without an individualized inquiry is necessary. As will be explained below, the government has failed to establish the reasonableness of petitioner's continued detention.

The government first contends that petitioner's continued detention is reasonable without an examination of its necessity because the duration of petitioner's detention is closer to the six month detention of the petitioner in Demore than the nearly three year long detention of the petitioner in Diop. The government is correct insofar as a ten month detention is not *per se* unreasonable; however, as is mentioned above, petitioner's detention is neither brief nor a slight deviation from the average identified in Demore. Thus, the government has the burden of clearly establishing other factors demonstrating the reasonableness of the continued

---

[8] The court recognizes that petitioner spent nearly a month in Luzerne County Custody; however, petitioner's time in Luzerne County was directly related to his removal proceedings as he sought to have the underlying convictions vacated to squash the removal action. Nonetheless, whether the Luzerne County period is counted or not, the court finds petitioner's period of detention to be significantly longer than the average.

detention because simply arguing that the instant detention is not quite as long as the one in Diop is insufficient.

When it comes to the other facts that establish reasonableness, the government only argues that petitioner's continued detention is reasonable because petitioner is responsible for the entirety of his delays.  Courts have historically considered who is responsible for delays in the proceedings when assessing the reasonableness of an alien's detention.  See, e.g., Tkochenko v. Sabol, 792 F. Supp. 2d 733, 741 (M.D. Pa. 2011) ("A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for the delay."). Some courts have even held that delays caused by an alien's litigation decisions are attributable to that alien.  See Prince v. Mukasey, 593 F. Supp. 2d 727, 735-36 (M.D. Pa. 2008) ("While this Court would not, in any way, even infer that petitioners should not file appropriate documents challenging their detention or the reasons for detention, petitioners such as Prince must know that their own conduct has to be included in determining whether or not a 'reasonable time' was exercised by the authorities . . . .").  The Prince case, however, is distinguished from the instant case because, in Prince, the petitioner had a scheduled individualized hearing in approximately one month.  See id. at 736.  The Prince court was satisfied this hearing would provide the alien-detainee with the level of due process protections required under the constitution.  Here, nothing in the record hints at when or if petitioner will be afforded another hearing.  The record is also void of any indication of whether the Immigration Judge will consider whether petitioner is a flight risk or

15

danger to the community at any hearing in the near future.

Furthermore, when it comes to attributing responsibility for the delays in this case, the government overemphasizes petitioner's effect on the proceedings. The government does not explain the Immigration Judge's mistake in granting a continuance for petitioner to find an attorney when an attorney had previously notified the court of his appearance. Additionally, the government supports its contention that petitioner is responsible for the delays by ambiguously stating that petitioner faced new criminal charges when he was, in fact, attempting to collaterally attack the charges that subject him to deportation (see supra note 3). The government does not offer any evidence that petitioner was dilatory in his litigation decisions or that he had the financial wherewithal to hire attorneys but deliberately declined to do so. Moreover, the court will not hold petitioner responsible for elements outside of his control, such as the speed at which removal proceedings progress.[9]  See, e.g., Gupta v. Sabol, No. 1:11-cv-1081, 2011 WL 3897964, at *3 (M.D. Pa. Sept. 6, 2011) (noting that "[a]lthough petitioner may be responsible for

---

[9] As is stated above, petitioner has been in ICE custody for 275 days and has attended four hearings before the Immigration Court. All of these hearings resulted in continuances, and one of the continuances was ordered because the detained petitioner, ICE, and the Immigration Judge were unaware that petitioner's attorney entered his appearance the day before. The pace at which petitioner's case is progressing through the system is far slower than that of the alien in the recent District of New Jersey case of Maynard v. Hendrix. In Maynard, the alien, who was detained for approximately eleven months, was denied relief because his continued detention was reasonable. Maynard v. Hendrix, No. 11-0605, 2011 WL 6176202, at *3-4 (D.N.J Dec. 12, 2011). The Maynard petitioner's detention was reasonable because he requested ten continuances without explanations. Id. In the instant case, petitioner had less than half the hearings and has provided adequate explanations for why he requested continuances.

16

seeking relief from removal, despite respondents' contention to the contrary, he is not responsible for the amount of time such determinations may take."). As it is far from clear whether petitioner is solely responsible for the delays in his case, the government's argument on this point does not establish the reasonableness of his detention without an individualized inquiry.

There are many other factors the government could have attempted to demonstrate that would establish the reasonableness of petitioner's continued detention. Such additional factors include an estimation of the expected duration of the removal proceedings, the likelihood that petitioner will actually be removed or any other exigency tending to militate in favor of the reasonableness of continued detention. These factors are important in determining the reasonableness of an alien's continued detention with no individualized inquiry. On the barren record before us, it would be pure speculation to reach a decision on the likelihood petitioner will be deported and, if so, how long the proceedings leading to that final decision will take.

The deprivation of an individual's liberty–alien and citizen alike–is at the core of our due process protections, and the government has not convinced the court of the reasonableness of petitioner's continued detention. Therefore, as the government has failed to demonstrate reasonableness, the court finds that Petitioner Aneudy Nieves-Delossant is entitled to an individualized determination as to his risk of flight and dangerousness as his continued detention without such a determination

17

will be violative of due process guarantees.

**Conclusion**

For the above-stated reasons, the court will overrule the government's objections and adopt Magistrate Judge Blewitt's report and recommendation. The court will order that, within ten days, petitioner should receive an individualized determination into whether his continued detention is necessary to carry out the purposes of 8 U.S.C. § 1226(c).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANEUDY NIEVES-DELOSSANT,** | : | No. 3:11cv1764 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| **ERIC HOLDER, JANET** | : | |
| **NAPOLITANO, THOMAS DECKER** | : | |
| **and CRAIG LOWE,** | : | |
| Respondents | : | |

## ORDER

**AND NOW,** to wit, this 29th day of December 2011, Magistrate Judge Blewitt's report and recommendation (Doc. 8) is hereby **ADOPTED** and the government's objections (Doc. 13) are hereby **DISMISSED**. It is **ORDERED** that, within the next ten (10) days, petitioner be afforded an individualized inquiry into whether his continued detention is necessary to achieve the purposes of Section 1226(c). The Clerk of the Court is directed to **CLOSE** this case.

                                                  **BY THE COURT:**

                                                  s/ James M. Munley
                                                  **JUDGE JAMES M. MUNLEY**
                                                  **United States District Court**